## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF INDIANA
## HAMMOND DIVISION

| | |
|---|---|
| **DONNA BRANDY,** | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | ) **CAUSE NO: 2:12-cv-_____** |
| | ) |
| **MAXIM HEALTHCARE SERVICES, INC.** | ) |
| **Defendant.** | ) |

## COMPLAINT AND JURY DEMAND

COMES NOW the Plaintiff, Donna Brandy, by counsel, Jeffrey S. Wrage of the law firm BLACHLY, TABOR, BOZIK & HARTMAN LLC, and for Plaintiff's Complaint against Defendant, states to the Court as follows:

### JURISDICTION

1.      Plaintiff, Donna Brandy ("Brandy"), is a citizen of Porter County, Indiana and domiciled in Valparaiso, Indiana. During all times relevant to Plaintiff's Complaint, Brandy was employed at Maxim Healthcare Services' Merrillville office.

2.      Defendant, Maxim Healthcare Services, Inc. d/b/a Merrillville Homecare ("Maxim"), is a for-profit foreign corporation licensed to do business in the State of Indiana, and does business in Merrillville, county of Lake, state of Indiana.

3.      This Court has jurisdiction over these matters pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1441. The matter at controversy involves a federal question of law.

### FACTUAL BACKGROUND

4.      During times relevant to her Complaint, Brandy is a qualified individual with a disability and/or a record of impairment.

5.     Brandy had hardware fusion prior to being hired at Maxim, and Brandy walks with a noticeable limp.

6.     Brandy was hired to work as a Certified Nursing Assistant ("CNA") at Maxim around August 3, 2009. When Brandy began working as a CNA at Maxim, Brandy performed her job well without accommodation.

7.     One month or so before Brandy's September 2, 2011, work injury, Brandy worked as a CNA "floating patients". As a floater, Brandy recalls assisting at least three (3) ambulatory patients.

8.     Around September 2, 2010, Brandy suffered a work injury while performing her job duties for Maxim.

9.     Brandy was approved for leave pursuant to the Family and Medical Leave Act due to her own serious health condition, her work injury.[1] (Ex.A) A couple days after Brandy began medical leave, Maxim presented Brandy with a write-up for something that she allegedly did months prior. Brandy disagreed with the written discipline she received. Brandy does not recall receiving any other written discipline during her employment at Maxim.

10.     Brandy was off work continuously from around September 2, 2010, until March 28, 2011, related to her work injury, when Brandy was released from care.

11.     Brandy was given an 8% permanent partial impairment (PPI) rating of the person as a whole.[2] (Ex.B) Due to her work injury Brandy was also given permanent lifting restrictions of up to 10 lbs with left arm only, and avoid heavy pushing/pulling.

---

[1] A copy of Brandy's Notice of Eligibility and Rights & Responsibilities (Family and medical Leave Act) form is attached as Exhibit A, and is incorporated herein by reference.

[2] A copy of Dr. Levin's Progress Note for Brandy dated March 28, 2011 is attached as Exhibit B, and is incorporated herein by reference.

2

(Ex.B)

12.    To Brandy's knowledge, there were no lifting requirements for CNAs at Maxim.

13.    Brandy requested to be returned to work with her given restrictions. Brandy believes that she could work with ambulatory patients at Maxim without accommodation or assist non-ambulatory patients with accommodation.

14.    When Brandy contacted Maxim around March 28, 2011, John Scott told her there was no work available, but advised Maxim would look for job placement for her.

15.    The following day (around March 29, 2011) Maxim informed Brandy (by its employee who Brandy knew as Lee, last name unknown) that Maxim has no work available for her because she is a risk.

16.    Because Brandy was told there was no work available, Brandy applied for unemployment compensation.

17.    After filing for unemployment, Maxim had its legal counsel offer Brandy a severance agreement. The attorney (Aubrey Kuchar) represented to Brandy that the agreement said Brandy will not sue Maxim for her work injury. The agreement Brandy received indicates that she would give up all of her rights to sue Maxim in exchange for $100.[3] (Ex.C pp.2-4)

18.    Around April 17, 2011, Brandy placed Maxim on notice (by Christine Murphy and Aubrey Kuchar) that Brandy would not accept Maxim's proposed agreement.

19.    Also around April 17, 2011, Brandy again informed Maxim that she wanted to return to work.

---

[3] A copy of the Severance, Release and Waiver Agreement received by Brandy is attached as Exhibit C, and is incorporated by reference.

3

20.    Brandy believed she could work as a CNA at Maxim with or without accommodation, but at no time did Maxim interact with Brandy to accommodate her given work restrictions.

21.    Sometime after April 28, 2011, Brandy learned from the Indiana Department of Workforce Development (DWD) that it was Maxim's position that Brandy voluntarily quit her job on March 28, 2011.

22.    Brandy did not voluntarily resign employment at Maxim.

23.    Brandy called Maxim to ask why it would report that she quit and spoke to a Maxim-employee whom she believes is named Marilyn. Marilyn filled out the unemployment information for DWD, but told Brandy that she could not recall why Maxim stated Brady quit.

24.    Brandy again informed Maxim (by Marilyn) that she continued to want to return to work.

### Verification

I hereby swear or affirm, under the penalty and pains of perjury, that the above fact representations of in paragraphs 4 through 24 are true and accurate.

DONNA BRANDY

25.    Brandy filed a Charge of Discrimination with the Equal Employment Opportunity Commission, which is stamped received November 17, 2011.[4] (Ex.D)

26.    On February 27, 2012, Brandy received a Notice of Right to Sue from the Equal Employment Opportunity Commission advising of the 90-days to file a Complaint against Maxim.[5] (Ex.E)

---

[4] Brandy's EEOC Charge is attached hereto as Exhibit D, and is incorporated by reference.

[5] Brandy's Notice of Right to Sue Maxim is attached as Exhibit E, and incorporated by reference.

4

## COUNT I
## AMERICANS WITH DISABILITIES ACT, AS AMENDED
## (Discrimination/Retaliation)

Comes now the Plaintiff, by counsel, BLACHLY TABOR BOZIK & HARTMAN, LLC, and hereby incorporates the foregoing paragraphs of Plaintiff's Complaint, and states as follows:

27.     Plaintiff incorporates by reference paragraphs 4 through 26 of the Factual Background section as though fully set forth herein.

28.     Maxim is an employer as that term is defined by the Americans with Disabilities Act, 42 U.S.C. §§ 12112, et seq., as amended ("ADAAA"). Upon information and belief, Maxim is headquartered in Columbia, Maryland, and Maxim employs more than 500 employees nationwide. Brandy complains of Maxim not allowing her to work with or without accommodation subsequent to the ADA Amendments Act of 2008 that went into effect on January 1, 2009. Count I of Plaintiff's Complaint must be evaluated under the ADAAA.

29.     Brandy was a competent and loyal employee who performed her work in a satisfactory manner, meeting Maxim's legitimate job expectations of her.

30.     Brandy is a qualified individual with a disability due to Brandy having a record of impairment and/or being substantially limited in one or more daily life activities including, but not limited to lifting, bending, twisting and working.

31.     After reaching maximum medical improvement and being released to return to work at Maxim around March 28, 2011, Maxim made no effort to find an ambulatory patient for Brandy to work with.

32. After reaching maximum medical improvement and being released to return to work at Maxim around March 28, 2011, Maxim made no effort to provide Brandy with accommodated work.

33. Upon information and belief, non-disabled CNAs are allowed to work with ambulatory patients at Maxim.

34. Brandy believes she could work as a CNA at Maxim with or without accommodation.

35. Brandy requested to be returned to work with or without accommodation.

36. After reaching maximum medical improvement and being released to return to work at Maxim, Maxim did not interact with Brandy to accommodate her given work restrictions.

37. Upon information and belief, Maxim requires its employees to be completely healed or to have no restrictions before Maxim will consider them for work.

38. Brandy did not voluntarily resign employment at Maxim, and Maxim continues to fail to engage in an interactive process to provide Brandy with accommodated work or an ambulatory patient.

39. During times relevant to Plaintiff's Complaint, Maxim by its agents, servants, supervisors, administrators, human resources and/or employees regarded Brandy as having an impairment that substantially limits one or more major life activities. Maxim by its agents, servants, supervisors, administrators, human resources and/or employees regarded Brandy as a qualified individual with a disability pursuant to the Americans with Disabilities Act, 42 U.S.C. §§ 12112, et seq., as amended by the ADAAA. Brandy received disparate treatment from said Maxim by its agents, servants, supervisors,

6

administrators, human resources and/or employees because Brandy was regarded as disabled.

40.    During the course and scope of Brandy's employment at Maxim, Maxim by its agents, servants, supervisors, administrators, human resources and/or employees acting within the course and scope of their employment, demonstrated a continuous, repetitious, cycle and pattern of discrimination and retaliation against Brandy based on her qualified disability, record of impairment and/or perception of Brandy as being substantially limited in one or more major life activities, which Maxim condoned and ratified, took no action to stop, and performed willfully or wantonly against Brandy, while Maxim was aware or should have been aware of such misconduct by and through its by its agents, servants, supervisors, administrators, human resources and/or employees in violation of the Americans with Disabilities Act, 42 U.S.C. §§ 12112, et seq., and other sections of the same Statute, as amended by the ADAAA. Said discrimination by Maxim and its agents, servants, supervisors, administrators, human resources and/or employees was willful, wanton, malicious, intentional and oppressive.

41.    Maxim by its agents, servants, supervisors, administrators, human resources and/or employees treated coworkers of Brandy who are not disabled, or whom they did not regard as disabled more favorably than Brandy, which Maxim condoned and ratified, took no action to stop, and performed willfully or wantonly against Brandy, while Maxim was aware or should have been aware of Brandy's disparate treatment by and through its agents, servants, supervisors, administrators, human resources and/or employees, in violation of the Americans with Disabilities Act, 42 U.S.C. §§ 12112, et seq., and other sections of the same Statute, as amended by the ADAAA.

7

42.    During the course and scope of Brandy's employment at Maxim, Maxim by its agents, servants, supervisors, administrators, human resources and/or employees acting within the course and scope of their employment, terminated and/or retaliated against Brandy for having exercised her statutorily protected rights, requesting accommodated work, and/or expressing that she intended to exercise her statutorily protected rights, which Brandy was lawfully entitled to do, which retaliation Maxim by its agents, servants, supervisors, administrators, human resources and/or employees condoned and ratified, took no action to stop, and performed willfully and wantonly against Brandy while Maxim was aware or should have been aware of such conduct. Upon information and belief, there is a causal link between Brandy's statutorily protected expressions and Maxim's failure to accommodate and failure to provide Brandy work assignments since her release for doctor's care around March 28, 2011. Maxim would not have done so if not for Brandy's engagement in a protected activity. Said retaliation by Maxim and by its agents, servants, supervisors, administrators, human resources and/or employees was willful, wanton, malicious, intentional and oppressive.

43.    Brandy has suffered and continues to suffer substantial losses and earnings, job experience and employment benefits (including without limitation affordable health care) that Brandy rightfully would have received absent discrimination/retaliation by Maxim, and by its agents, servants, supervisors, administrators, human resources and/or employees acting within the course and scope of their employment.

44.    Brandy has incurred costs and expenses to file this action against Maxim to protect the statutory rights of Brandy with respect to Maxim. Brandy has suffered

general emotional distress, general mental pain and suffering, humiliation, embarrassment to name, character and reputation due to the actions and inactions of Maxim by its agents, servants, supervisors, administrators, human resources and/or employees acting within the course and scope of their employment.

45.     In addition, the above acts by Maxim, and its agents, servants, supervisors, administrators, human resources and/or employees acting within the course and scope of their duties and/or employment, individually and in concert, were willful, wanton, malicious, intentional and oppressive, and justify the awarding of actual, compensatory and/or punitive damages in favor of Brandy against Maxim and an award in favor of Brandy and against Maxim for her attorney fees, expert witness fees and other costs associated in filing this Complaint.

WHEREFORE, Plaintiff, by counsel, request relief of the Court consisting of all damages afforded by law including, but not limited to, the following:

a.     Judgment for actual, compensatory and punitive damages;
b.     Judgment for Back pay and retroactive increases;
c.     Reinstatement with the same seniority status and benefits Brandy would have had she not been denied job assignments since March 28, 2011, or in the alternative, Front pay;
d.     Judgment for general emotional distress and humiliation Brandy has suffered as a result of Maxim's (by its agents, servants, supervisors, administrators, human resources and/or employees) unlawful conduct;
e.     Expenses of litigation and reasonable attorney fees and costs;
f.     Prejudgment interest at the statutory rate; and
g.     All other just and proper relief in the premises, against Maxim.

## COUNT II
## RETALIATION

Comes now the Plaintiff, by counsel, BLACHLY TABOR BOZIK & HARTMAN, LLC, and hereby incorporates the foregoing paragraphs of Plaintiff's Complaint, and states as follows:

9

46.     Plaintiff incorporates by reference paragraphs 4 through 26 of the Factual Background section as though fully set forth herein.

47.     During times relevant to Plaintiff's Complaint, Maxim is an employer as that term is defined by Title VII of the Civil Rights Act of 1964, as amended.

48.     During times relevant to Plaintiff's Complaint, Maxim is an employer as that term is defined by the Family Medical Leave Act of 1993, as amended, 29 U.S.C. §§ 2601, et seq.

49.     During times relevant to Plaintiff's Complaint, Brandy worked at Maxim for more than one year, and Brandy worked more than 1250 hours during the 12 months preceding Brandy's need for medical leave beginning during September 2010. Brandy was approved for FMLA during September 2010.

50.     Brandy did not voluntarily resign from her employment at Maxim.

51.     Upon information and belief, Maxim and its agents retaliated against Brandy by failing to provide Brandy job assignments after she was given permanent medical restrictions.

52.     Upon information and belief, Maxim and its agents retaliated against Brandy by failing to provide Brandy job assignments after Brandy filed her EEOC Charge of Discrimination against Maxim.

53.     Upon information and belief, Maxim and its agents used Brandy's taking of FMLA leave as a negative factor in employment actions.

54.     Upon information and belief, Maxim and its agents unlawfully discharged Brandy in violation of Title VII of the Civil Rights Act of 1964, as amended (hereinafter "Title VII") and/or the Family Medical Leave Act of 1993, as amended, 29 U.S.C.

10

§§ 2601, et seq. (hereinafter "FMLA").

55.    Maxim and its agents engaged in acts prohibited by the FMLA and/or Title VII. Maxim and its agents discriminated/retaliated against Brandy after she engaged in statutorily protected activity pursuant to the FMLA and/or Title VII. Upon information and belief, there is a causal link between Brandy's statutorily protected expressions and Maxim's employment decisions concerning Brandy.

56.    Brandy has suffered and continues to suffer substantial losses and earnings, job experience, and employment benefits that Brandy rightfully would have received absent discrimination/retaliation by Maxim and its agents acting within the course and scope of their duties and/or employment in violation of the FMLA and/or Title VII. Brandy has incurred costs and expenses to file this action against Maxim to protect the statutory rights of Brandy with respect to Maxim.

57.    As a direct, proximate, and foreseeable result of the willful and wanton actions of Maxim and its agents acting within the course and scope of their duties and/or employment, individually and in concert, Brandy suffered damages and continues to sustain harm. Brandy's damages include, but are not limited to, lost wages (including overtime), and lost employment benefits justifying the awarding of liquidated and/or punitive damages in favor of Brandy against Maxim; and an award in favor of Brandy and against Maxim for her attorney fees, expert witness fees and other costs associated in filing this Complaint.

WHEREFORE, Plaintiff, by counsel, request relief of the Court consisting of all damages afforded by law including, but not limited to, the following:

a.    Compensatory/punitive damages;
b.    Back pay and retroactive increases;

11

    c.     Employment benefits,

    d.     Interest on those each of those sums, along with an amount equaling the preceding sums to be awarded as liquidated damages,

    e.     Reinstatement with the same seniority status and benefits Brandy would have had but for her termination or, in the alternative, Front pay;

    f.     Expenses of litigation and reasonable attorney fees and costs; and

    g.     All other just and proper relief in the premises, against Maxim.

## COUNT III
## FRAMPTON DISCHARGE

Comes now the Plaintiff, by counsel, BLACHLY TABOR BOZIK & HARTMAN, LLC, and hereby incorporates the foregoing paragraphs of Plaintiff's Complaint, and states as follows:

58.    Plaintiff incorporates by reference paragraphs 4 through 26 of the Factual Background section as though fully set forth herein.

59.    Around September 2, 2010, Brandy suffered a work injury while performing her job duties for Maxim.

60.    Brandy sought treatment for her injury(ies) under the Defendant's worker's compensation policy. Brandy sought treatment from one of the Defendant's physicians. Brandy sought said treatment and worker's compensation benefits which are provided by law.

61.    Brandy was costing Maxim money with her multiple doctor visits.

62.    Brandy was off work continuously until around March 28, 2011, related to her work injury, when Brandy was released from doctor's care.

63.    Brandy was given an 8% permanent partial impairment (PPI) rating of the person as a whole. (Ex.B) Due to her work injury Brandy was also given permanent lifting restrictions of up to 10 lbs with left arm only, and avoid heavy pushing/pulling. (Ex.B).

12

64.    Brandy contacted Maxim around March 28, 2011, about returning to work as a CNA at Maxim. Maxim told Brandy there was no work immediately available for her, but Maxim would look for job placement for Brandy.

65.    Around one day later Maxim told Brandy that because Brandy is a risk, no work was available for her at Maxim.

66.    Within around two weeks of Brandy requesting to be returned to work, because of her work injury, Maxim offered Brandy a severance agreement that would provide Brandy $100 in exchange for Brandy giving up all of her rights to sue Maxim. (Ex.C pp.2-4) Around April 17, 2011, Brandy placed Maxim on notice that she would not accept Maxim's proposed agreement

67.    Also around April 17, 2011, Brandy informed Maxim that she wanted to return to work with or without accommodation.

68.    Maxim discharged Brandy in retaliation on the basis that she sustained a worker's compensation injury, and after Brandy refused to accept Maxim's proposed agreement.

69.    Upon information and belief, Maxim committed an intentional, wrongful act when it failed to consider Brandy for job assignments and discharged Brandy from employment.

70.    Maxim's employment decisions as to Brandy are related to her work injury and medical care received and paid for through Maxim's worker's compensation policy.

71.    Although Brandy was fully released to return to work around March 28, 2011, Maxim failed or refused to provide Brandy job assignments, discharged Brandy, and informed DWD that Brandy voluntarily resign when she did not, and all because of

13

Brandy's work injury during September 2010.

72.     Brandy has suffered and continues to suffer substantial losses and earnings, job experience, seniority, retirement benefits, and other employment benefits, that Brandy rightfully would have received absent her retaliatory discharge by Maxim, and Maxim's agents, supervisors, employees and servants. Brandy has incurred costs and expenses to file this action against Maxim to protect the constitutional and statutory rights of Brandy with respect to Maxim for acting with willful indifference to Brandy's protected rights. Brandy has suffered humiliation, general mental pain and anguish, embarrassment to her name, character and reputation, and has suffered decreased employability. In addition, the above acts by the Maxim and Maxim's agents, supervisors, employees and servants, individually and in concert, were willful and wanton, and justify the awarding of liquidated (exemplary) damages in favor of Brandy and against Maxim, an award of punitive damages in favor of Brandy and against Maxim, and an award in favor of Brandy and against Maxim for her attorneys fees, expert witness fees and other costs associated in filing this Complaint against Maxim.

WHEREFORE, Plaintiff, by counsel, request relief of the Court consisting of all damages afforded by law including, but not limited to, the following:

   a.   Compensatory/punitive damages;
   b.   equitable relief and costs;
   c.   Expenses of litigation and reasonable attorney fees and costs; and
   d.   All other just and proper relief in the premises, against Maxim.

Respectfully submitted,
**Blachly, Tabor, Bozik & Hartman, LLC**

Jeffrey S. Wrage (Atty. #18262-64)
56 S. Washington, Suite 401
Valparaiso, Indiana 46383
Ph. (219) 464-1041
Fax (219) 464-0927
jswrage@btbhlaw.com
Attorney for Plaintiff

## JURY DEMAND

COMES NOW the Plaintiff, Donna Brandy, by counsel, Jeffrey S. Wrage of Blachly
Tabor Bozik & Hartman LLC, and demands trial by jury.

Respectfully submitted,
**Blachly, Tabor, Bozik & Hartman, LLC**

Jeffrey S. Wrage (Atty. #18262-64)
56 S. Washington, Suite 401
Valparaiso, Indiana 46383
Ph. (219) 464-1041
Fax (219) 464-0927
jswrage@btbhlaw.com
Attorney for Plaintiff

15